UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

| | |
|---|---|
| BOCA RATON REGIONAL HOSPITAL, INC., F/K/A BOCA RATON COMMUNITY HOSPITAL<br><br>Plaintiff,<br><br>vs.<br><br>HUMANA MEDICAL PLAN, INC., HUMANA HEALTH INSURANCE COMPANY OF FLORIDA, INC., AND HUMANA INSURANCE COMPANY,<br><br>Defendants. | Case No. _____<br><br>DEFENDANTS' NOTICE OF REMOVAL UNDER 28 U.S.C. §§ 1441(c), 1442(a)(1), 1446, AND 1331 (FEDERAL QUESTION AND FEDERAL OFFICER JURISDICTION) |

## NOTICE OF REMOVAL

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA:

**PLEASE TAKE NOTICE** that Defendants Humana Medical Plan, Inc., Humana Health Insurance Company of Florida, Inc., and Humana Insurance Company hereby remove this action from the Circuit Court of the Fifteenth Judicial District in and for Palm Beach County, Florida, to the United States District Court for the Southern District Court of Florida, West Palm Beach Division, being the district and division in which the action is pending. Removal is proper pursuant to 28 U.S.C. §§ 1441(c), 1442(a)(1), 1446, and 1331.

1

KENNY NACHWALTER, P.A.

**Procedural Matters and Nature of the Action**

1. On August 20, 2014, Plaintiff Boca Raton Regional Hospital, Inc., f/k/a/ Boca Raton Community Hospital ("Plaintiff") filed a civil complaint (the "Complaint" or "Compl.") in the Circuit Court of the Fifteenth Judicial District in and for Palm Beach County, Florida, which names Humana Medical Plan, Inc., Humana Health Insurance Company of Florida, Inc., and Humana Insurance Company (collectively, "Humana") as Defendants. A copy of all process, pleadings, orders, and other papers or exhibits of every kind that have been filed in that action are attached to this Notice as Composite Exhibit "A."

2. Humana is a Medicare Advantage Organization ("MAO") and, as such, has a contract with the United States Department of Health and Human Services Centers for Medicare and Medicaid Services ("CMS") to provide managed care coverage to eligible Medicare members under the Medicare Advantage Program.

3. The Complaint asserts that Plaintiff has entered into a Hospital Participation Agreement ("Agreement") with Humana that requires Humana to compensate Plaintiff a percentage of the Medicare allowable amount for services and supplies that Plaintiff provided to Humana's Medicare Advantage members. Compl. ¶¶ 4-9. Plaintiff alleges it has been underpaid because Humana has improperly applied "CARC 253-Sequestration-Reduction in Federal Spending" or the "sequestration adjustment" to the Medicare allowable amount. *Id.* ¶¶ 12-13, 23-24. Plaintiff seeks declaratory relief and an award of damages.

4. The Complaint includes only two causes of action: one for breach of contract, and another for "Declaratory Action," which requests, *inter alia*, that "this Court construe the term Medicare allowable amount to be the Medicare amount payable before applying the adjustment for sequester." *Id.* ¶ 26.

KENNY NACHWALTER, P.A.

5. This Notice of Removal is timely under 28 U.S.C. § 1446(b), since it has been filed with this Court within 30 days of service of the initial pleading setting forth the claim for relief. Specifically, Defendant Humana Medical Plan, Inc. was served with a summons and complaint on September 11, 2014, Defendant Humana Health Insurance Company of Florida, Inc., was served with a summons and complaint on September 16, 2014, and Defendant Humana Insurance Company was served with a summons and complaint on September 16, 2014.

6. The venue for this removal action is proper pursuant to 28 U.S.C. § 1441(a) because the United States District Court for the Southern District of Florida, West Palm Beach Division embraces the judicial circuit that includes the Circuit Court of the Fifteenth Judicial District in and for Palm Beach County, Florida, where the state court action was filed. Such venue is represented as proper solely for removal purposes.

7. This Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1442, 28 U.S.C. § 1331, and 42 U.S.C. §§ 1395, *et seq*.

8. No Act of Congress prohibits the removal of this case. This cause is removable under 28 U.S.C. §§ 1441–1453.

9. Immediately upon the filing of this Notice of Removal, Humana will give written notice to Plaintiff's counsel of the removal of this case and will file a copy of this Notice of Removal with the Clerk of the Circuit Court of the Fifteenth Judicial District in and for Palm Beach County, Florida, pursuant to 28 U.S.C. § 1446(d).

10. Counsel for Humana has served Plaintiff's counsel with a copy of this Notice by United States Mail and electronic mail.

11. This notice has been signed pursuant to Rule 11 of the Federal Rules of Civil Procedure.

KENNY NACHWALTER, P.A.

## This Action is Removable Under the Federal Officer Removal Statute

12. Under Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395–1395ccc, commonly known as the Medicare Act, Congress established a federally subsidized health insurance program that is administered by the Secretary of the United States Department of Health and Human Services ("HHS"). *See Heckler v. Ringer*, 466 U.S. 602, 605 (1984). The Secretary of the HHS (the "Secretary") has delegated the responsibility for administering the Medicare program to CMS, which then delegates the administration of benefits through contracts with MAOs like Humana. *See* 42 U.S.C. § 1395w-27. Humana has been authorized to act for a federal officer in affirmatively executing duties under federal law. Humana assists the Secretary and CMS in carrying out a basic governmental task—providing healthcare benefits that, absent Humana's contract with CMS and its Agreement with Plaintiff, the federal government would have to provide itself. *See Bennett v. MIS Corp.*, 607 F.3d 1076, 1088 (6th Cir. 2010).

13. Medicare Part A covers inpatient hospital admissions, care in a skilled nursing facility, hospice care, and some home health care. *See* 42 U.S.C. § 1395d. Medicare Part B covers physician services, outpatient hospital services, medical supplies, and preventive services. *See id.* § 1395k; 42 C.F.R. § 410.3(a). Medicare Parts A and B, also known as "Original Medicare," are directly administered by CMS. "In 1997, as a part of the Balanced Budget Act of 1997, Congress enacted changes to Medicare, partly to cut costs and partly to provide Medicare recipients with a greater variety of health care choices." *Mann v. Reeder*, No. 10-CV-00133, 2010 WL 5341934, at *3 (W.D. Ky. Dec. 21, 2010). "These changes included the enactment of Part C[,] which allows Medicare beneficiaries to opt out of traditional coverage under Medicare Parts A and B," and into Medicare Advantage Plans offered by MAOs such as

KENNY NACHWALTER, P.A.

Humana. *Id.* In creating the Medicare Advantage program, Congress intended that MAOs would effectively stand in the shoes of CMS:

> Under original fee-for-service, the Federal government [*i.e.*, CMS] alone set legislative requirements regarding reimbursement, covered providers, covered benefits and services, and mechanisms for resolving coverage disputes. Therefore, the Conferees intend that [the Part C] legislation provide a clear statement extending the same treatment to private Medicare [Advantage] plans providing Medicare benefits to Medicare beneficiaries.

H.R. Rep. No. 105-217, at 638 (1997), *available at* http://www.gpo.gov/fdsys/pkg/CRPT-105hrpt217/pdf/CRPT-105hrpt217.pdf. Because MAOs are responsible for providing the same healthcare benefits under federal law as CMS administers under Original Medicare, "Medicare Advantage plans are regulated, monitored, and directly controlled by CMS." *Mann*, 2010 WL 5341934, at *3.

14. Humana, which is an MAO that administers Medicare Advantage Plans under Medicare Part C, is a federal officer for purposes of the federal officer removal statute, 28 U.S.C. § 1442(a)(1), and has a right to remove this action to federal court. The federal officer removal statute permits removal of any action against:

> The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442(a)(1).

15. The fundamental purpose of federal officer removal jurisdiction is to "protect the Federal Government from . . . interference with its 'operations'". *Watson v. Philip Morris Cos.*, 551 U.S. 142, 150 (2007). To achieve its purpose, the federal officer removal statute is to be

KENNY NACHWALTER, P.A.

broadly construed. *City of Cookeville v. Upper Cumberland Elec. Membership Corp.*, 484 F.3d 380, 389 n.5 (6th Cir. 2007) (stating that the federal officer removal statute "is broad and allows for removal when its elements are met regardless of whether the suit could originally have been brought in a federal court." (quotation omitted)); *see also Joseph v. Fluor Corp.*, 513 F. Supp. 2d 664, 671 (E.D.La. 2007) ("Indeed, the Court must interpret the statute liberally, resolving any factual disputes in favor of federal jurisdiction."); *Progressive Specialty Ins. Co. v. Hanson*, No. 12-CV-0734, 2012 WL 5966638, at *1 n.1 (M.D. Ala. 2007 Nov. 28, 2012) (finding federal officer removal proper regardless of whether the Medicare Act deprives federal courts of primary federal-question subject matter jurisdiction of claims arising thereunder prior to administrative exhaustion). In addition, the Supreme Court has found that the statute "serves to overcome the 'well-pleaded complaint' rule which would otherwise preclude removal even if a federal defense were alleged." *Mesa v. California*, 489 U.S. 121, 136–37 (1989) (citation omitted).

16. A party seeking to remove a case to federal court under 28 U.S.C. § 1442(a)(1) must satisfy four criteria: (i) it must be a "person"; (ii) it must be "acting under" a federal officer or agency; (iii) it must be sued for actions "under color of such office"; and (iv) it must have a colorable federal defense. *City of Cookeville*, 484 F.3d at 390-91; *see also Willingham v. Morgan*, 395 U.S. 402, 406-07 (1969). Humana meets each of these requirements.

17. ***First***, Humana satisfies the "person" requirement because a corporation is a person within the meaning of the federal officer removal statute. *See* 1 U.S.C. § 1 (in "any Act of Congress," the word "person" shall include "corporations"); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007) ("it is clear that corporations are 'persons' within the meaning of the [federal officer removal] statute"); *Depascale v. Sylvania Elec. Prods.*,

584 F. Supp. 2d 522, 526 (E.D.N.Y. 2008) (same); *Marley v. Elliot Turbomachinery Co.*, 545 F. Supp. 2d 1266 (S.D. Fla. 2008) (applying federal officer removal statute to corporations).

18.   ***Second***, Humana also satisfies the "acting under" and "under the color of federal office" requirements. "Although the test treats the 'acted under a federal officer' element as distinct from the 'under color of federal office' element, the questions tend to collapse into a single requirement: that the acts that form the basis for the state civil or criminal suit were performed pursuant to an officer's direct orders or to comprehensive and detailed regulations." *Mann*, 2010 WL 5341934, at *2 (internal quotation marks omitted) (quoting *Reg'l Med. Transp, Inc. v. Highmark, Inc.*, 541 F. Supp. 2d 718, 724 (E.D. Pa. 2008)). As the Supreme Court has acknowledged, "[g]overnment contractors fall within the terms of the federal officer removal statute, at least when the relationship between the contractor and the Government is an unusually close one involving detailed regulation, monitoring, or supervision." *Watson*, 551 U.S. at 153.

19.   Here, the action of which Plaintiff complains—application of a newly created federal "sequestration adjustment"—involves alleged conduct that occurred in the context of Humana performing its duties under federal law pursuant to a comprehensive and complex regulatory framework imposed by the Medicare Act, 42 U.S.C. §§ 1395–1395ccc, and the Budget Control Act of 2011, Pub. L. 112–25, S. 365, 125 Stat. 240 (enacted August 2, 2011). Many courts have concluded that private companies that, like Humana, administer Medicare Advantage Plans under Medicare Part C are persons acting under the direction of the Secretary, and are therefore capable of meeting the requirements for removal under 28 U.S.C. § 1442(a)(1). *See, e.g., Manorcare Potomac v. Understein*, No. 02-CV-1177, 2002 WL 31426705, at *1 n.1 (M.D. Fla. Oct. 16, 2002) ("Aetna sufficiently alleges . . . that [its] obligations . . . as a provider of 'Medicare + Choice' benefits under contract with the Health Care Financing Administration

of the United States Department of Health and Human Services qualifies Aetna as a 'person acting under' an agency or officer of the United States for purposes of the Federal Officer Removal Statute."); *Mann*, 2010 WL 5341934, at *3 (holding that the administrator of a Medicare Advantage plan is deemed an "officer" under the statute, and may remove to federal court "claims asserted [] against [it] . . . due to [its] actions as a Medicare Advantage Plan provider"); *see also Neurological Assocs. v. Blue Cross/Blue Shield of Fla.*, 632 F. Supp. 1078, 1080 (S.D. Fla. 1986) (removal appropriate where doctor filed suit in state court seeking damages under state law related to his allegedly unlawful suspension under Medicare program by fiscal intermediary).

20.  Humana satisfies the "acting under" requirement because it was authorized by federal law and its contract with CMS to act for federal officers, namely, CMS and the Secretary, in executing duties prescribed by federal law. *Cf. Marsaw v. Thompson*, 133 F. App'x 946, 949 (5th Cir. 2005) (Medicare contractor "was acting under the direction of the federal government in performing duties delegated by HHS"). Humana was authorized to assist the Secretary and CMS in carrying out their statutory obligation to provide Medicare benefits to Medicare Advantage beneficiaries. This basic governmental task of providing healthcare benefits would have been performed by the Secretary and CMS if Humana had not stepped into their shoes pursuant to its contract under federal law. Absent Humana's contract with CMS and its Agreement with Plaintiff, reimbursement for services rendered by Plaintiff to Medicare beneficiaries still would have been subject to CMS's application of the "new" federal sequestration adjustment, described by Plaintiff as "CARC 253-Sequestration-Reduction in Federal Spending." Compl. ¶ 12. The Complaint acknowledges that the Sequestration Reduction is an action of the federal government. Therefore, Plaintiff's allegation is merely that

8

Humana improperly applied that Sequestration Reduction. Accordingly, Humana is simply "acting under" CMS to accomplish the same objective in accordance with federal law.

21.     ***Third***, Humana satisfies the "under color" prong of federal officer removal because in administering the Medicare Advantage program it is complying with duties set forth in federal law and regulations and in its contract with CMS. Humana does not simply operate in a regulated industry: it derives its operational authority from a detailed and comprehensive federal regulatory scheme that prescribes Humana's duties and responsibilities as an MAO. In short, Humana and all MAOs operate in conjunction with the federal government, and as a result, Humana's conduct as an MAO—including its application of a federal "sequestration adjustment,"— is performed "under color" of the federal government, CMS, and the associated federal framework that regulates the Medicare Advantage program.

22.     ***Fourth***, Humana satisfies the requirement to have a colorable federal defense. The Eleventh Circuit holds that the "defense need only be plausible." *Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1427 (11th Cir. 1996). Humana maintains that, under the Agreement with Plaintiff, reimbursement for services rendered to Medicare Advantage beneficiaries is determined in whole or in part by a Medicare reimbursement methodology developed and promulgated by CMS. The Agreement also confirms the mutual understanding of Humana and Plaintiff that, when they agreed to base payment upon a Medicare methodology, they intended to adjust payments under the Agreement in accordance with any adjustments to reimbursement methodologies that CMS might implement. In particular, the Agreement requires reimbursement of services "in accordance with Medicare Advantage laws, rules, and regulations," which further underscores the parties' understanding that Plaintiff would be paid for services in the same

manner that CMS pays for services rendered by providers in Parts A and B.[1] The Budget Control Act of 2011 changed the manner in which CMS paid for services rendered to Medicare beneficiaries by requiring the application of a sequestration adjustment effective April 1, 2013. As an MAO that has stepped into the shoes of CMS and is acting under color of CMS, Humana accordingly applied a "sequestration adjustment," as Plaintiff acknowledged. *See* Compl. ¶ 23. Thus, Humana has a colorable federal defense based on CMS's change in reimbursement methodology under federal law as incorporated into Humana's Agreement with Plaintiff.

23. For all of the foregoing reasons, Plaintiff's action is properly removed to this Court under the federal officer removal statute.

### This Action is Removable Because It Raises a Substantial Federal Question, and Thus Arises Under the Laws of the United States

24. Removal of a case from state to federal court is proper if the case could have been brought originally in federal court. *See* 28 U.S.C. § 1441(a). A civil action filed in state court may be removed to federal court under § 1441(c)(1)(A) if the claim is one "arising under" federal law. *See Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003) (applying former 28 U.S.C. §1441(b), which then had like wording). Pursuant to 28 U.S.C. § 1331, federal courts have subject matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. To determine whether a claim arises under federal law, a court must examine the "well pleaded" allegations to determine whether those allegations present a federal question. *Beneficial Nat'l Bank*, 539 U.S. at 6.

---

[1] The quoted language is included within the redacted portions of Exhibit B and Exhibit C to the Complaint. By quoting this redacted language, Humana is not waiving the confidentiality provisions in the Agreement and any other contracts between the parties.

25. The Supreme Court has recognized an exception to the well-pleaded complaint rule by which a case can be found to "arise under" federal law even when the complaint contains only claims pursuant to state law. *Grable & Sons Metal Prods., Inc., v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312-14 (2005). In particular, "even when a plaintiff has pled only state-law causes of action, he may not avoid federal jurisdiction if either (1) his state-law claims raise substantial questions of federal law, or (2) federal law completely preempts his state-law claims." *Dunlap v. G & L Holding Group, Inc.*, 381 F.3d 1285, 1290 (11th Cir. 2004) (*citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 13 (1983)). For a court to find that a state-law claim raises substantial questions of federal law, "the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314; *see New York City Health & Hosps. Corp. v. Wellcare of N.Y., Inc.*, 769 F. Supp. 2d 250, 256–57 (S.D.N.Y. 2011) (resolution of embedded interpretation of Medicare Act justified *Grable* jurisdiction).

26. As this rule suggests, *Grable* and its progeny hold that federal-question jurisdiction exists where: (i) a state-law claim depends on the resolution of a disputed federal issue, (ii) the federal interest in the issue is disputed and substantial, and (iii) exercising jurisdiction would not disrupt the congressionally approved balance between federal and state jurisdiction. *See* 545 U.S. at 313–14. Applying these factors, removal is proper in this action for the following reasons:

27. *First*, the action, as pled by Plaintiff, turns on a substantial federal question regarding the proper construction, application, and effect of the newly created "CARC 253-

Sequestration-Reduction in Federal Spending," as established and implemented through the Budget Control Act of 2011 and the Medicare Act and its associated rules and regulations.

28. **Second**, the federal government's interest in this issue is substantial and disputed because the federal sequestration adjustment has impacted hundreds of MAOs and hundreds of thousands of providers and there is clear disagreement between these two groups as to how the federal sequestration adjustment impacts payment for services rendered to Medicare beneficiaries. Indeed, attached to the Complaint is a May 1, 2013 CMS guidance letter to MAOs and a separate April 17, 2014 CMS letter to the American Hospital Association, both of which seek to explain how the federal sequestration adjustment is to be implemented. *See* Compl. Exs. D & E.

29. **Third**, the balance between federal and state jurisdiction will not be affected because Medicare already has an administrative review process that does not interfere with state courts, and resolution of this matter by this Court is likely to reduce or eliminate duplicative state court lawsuits.

30. Other courts have applied *Grable* in suits involving the Medicare program and found removal proper where the plaintiff's claims depend in part upon an interpretation of a Medicare reimbursement mechanism. *See, e.g., New York City Health*, 769 F. Supp. 2d 250 (finding federal-question jurisdiction where health care provider brought breach of contract claim against licensed health plan, alleging that defendant paid amounts lower than what Medicare required); *see also In re Pharm. Indus. Average Wholesale Price Litig.*, 457 F. Supp. 2d 77, 80 (D. Mass. 2006) (finding federal jurisdiction over suit asserting state law claims that turned on interpretation of Medicare statute and regulations, because interpretation of Medicare

statute "is a substantial federal issue that properly belongs in federal court. . . . [since it] directly impacts the viability and effectiveness of the federal Medicare program").

31. In *New York City Health*, for example, the plaintiff health care provider alleged that defendant health plan breached its contract by paying plaintiff less than the amounts set by Medicare for services provided to defendant's Medicare enrollees. 769 F. Supp. 2d at 256. Citing *Grable*, the court noted that even "[w]here a plaintiff asserts no federal cause of action on the face of the complaint, the state action may nevertheless be removed to federal court where 'the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Id.* at 255 (quoting *Empire Healthcare Assur., Inc. v. McVeigh*, 547 U.S. 677, 690 (2006), and citing *Grable*, 545 U.S. at 308, 312).

32. With respect to the first prong of the *Grable* test, the court in *New York City Health* found that because plaintiff's claim required proving that defendant failed to pay the amounts set by Medicare, the complaint had raised a federal issue. *Id.* at 256. The court recognized that the plaintiff's breach of contract claim alleged that the defendant, WellCare, was required "to pay health care providers according to the terms and conditions required by Medicare law and regulations." *Id.* The Court reasoned that, "in order to prevail on its breach of contract claim, [plaintiff] will have to prove that [defendant's] failure to pay the DRG amount violated Medicare law and regulations." *Id.* Therefore, the "breach of contract claim necessarily raises the issue of whether WellCare violated the Medicare laws and regulations incorporated by reference into its contract with CMS." *Id.*

33. Under the second prong, the court found that WellCare met *Grable*'s "substantial and disputed" requirement. The court found the issue of Medicare reimbursement to be disputed insofar as plaintiff and WellCare disagreed regarding the effect of a CMS guidance letter upon

the amount that plaintiff should be paid. WellCare argued that its reimbursements to plaintiff "did not violate Medicare law or regulations." *Id.*; *see also In re Pharm. Indus. Average Wholesale Price Litig.*, 457 F. Supp. 2d 77 at 81 (finding conflicting interpretations of the term "average wholesale price" in a Medicare statute, 42 U.S.C. § 1395u(o), was a "disputed issue" under *Grable* where the prevailing interpretation would determine the outcome of the case). And the court reasoned that this issue was substantial insofar as the case "implicate[d] the complex reimbursement schemes created by Medicare law" meaning "[t]he eventual outcome of [the] litigation could potentially affect the hundreds of [MAOs] that . . . contracted with [the Centers for Medicare & Medicaid Services]." 769 F. Supp. 2d at 256–57.

34. With respect to the third and final prong, the court found that granting federal jurisdiction would not tip the balance of federal and state judicial responsibilities, explaining that existing Medicare review procedures already permit review in federal court, and that adjudicating the instant case would not "open the floodgates and disrupt the litigation current" with similar state court cases. *Id.* at 258. Because the plaintiff's claims satisfied these three factors, the court concluded that federal question jurisdiction existed. *Id.* at 259.

35. In this case, Humana similarly satisfies all three prongs of the *Grable* test.

36. ***First***, as in *New York City Health*, Plaintiff's breach of contract claim necessarily raises the issue of whether Humana violated Medicare laws, rules, and regulations that are incorporated by reference into the Agreement. For example, Plaintiff seeks damages which are, in practical terms, the difference between the amount that Plaintiff alleges Humana should have paid under the contract "in accordance with Medicare Advantage laws, rules, and regulations," and the amount that Humana actually paid after "subtracting the sequestration adjustment from the payment." Compl. ¶ 23. In other words, for Plaintiff to pursue its claim, the Court must first

14

address two issues of federal law: (1) the "Medicare allowable" amount owed to Plaintiff as determined "in accordance with Medicare Advantage laws, rules, and regulations," and (2) the "Medicare allowable" amount as determined "in accordance with Medicare Advantage laws, rules, and regulations" after proper application, if any, of the "sequestration adjustment." In particular, Plaintiff alleges that Humana interprets the term "Medicare Allowable Amount" in a manner "contrary to the position of CMS," and, as a result, Plaintiff asserts there is "a need for [a] declaration of what the term, 'Medicare Allowable Amount' is," and "request[s] that this Court construe the term Medicare Allowable Amount to be the Medicare amount payable before applying the adjustment for sequester." *Id.* ¶¶ 24-26. Although Plaintiff disagrees with the application of the *federal* sequestration adjustment, it denies neither the existence of such an adjustment, nor the possibility that such an adjustment could be incorporated into the Agreement. Therefore, based on the language and content of Plaintiff's own allegations, the Complaint itself raises substantial questions of federal law.

37. **Second**, the federal interest in determining the proper construction and effect of the federal sequestration adjustment is disputed and substantial. As in *New York City Health*, the federal interest derives from the fact that Plaintiff's claim "implicates the complex reimbursement schemes created by Medicare law" as well as the proper interpretation of a CMS guidance letter. *See* 769 F.Supp.2d at 256–57. The dispute arises from Humana's contention that the language in the Agreement to reimburse Plaintiff "in accordance with Medicare Advantage laws, rules, and regulations" incorporates by reference the federal "sequestration adjustment," whereas Plaintiff disagrees with this interpretation. And it is obvious that the disputed issues are substantial because they "implicate[] the complex reimbursement schemes created by Medicare law," which in turn affects hundreds of MAOs and possibly hundreds of

15

thousands of providers across the nation. *Id.* at 257. This Complaint does not plead a garden-variety breach of contract claim.

38.     ***Third***, exercising federal jurisdiction will not disturb "any congressionally approved balance of federal and state judicial responsibilities" as described in *Grable*. 545 U.S. at 314. Medicare's existing administrative review requirements limit any disruption with similar state court cases, and should the Court uphold jurisdiction and resolve the federal issue at hand, it may help bring some welcome uniformity to a regulatory framework in need of clear and consistent guidance. *See, e.g., New York City Health*, 769 F. Supp. 2d at 258-59. Indeed, it is likely that disputes have arisen between other MAOs and other providers as a result of the federal "sequestration adjustment."

39.     For the foregoing reasons, Plaintiff's action is properly removed to this Court under the federal question jurisdiction.

## CONCLUSION

**WHEREFORE**, Humana files this notice to remove the action, now pending in the Circuit Court of the Fifteenth Judicial District in and for Palm Beach County, Florida, Case No. 2014 CA 010287, from that court to this Court, and requests that this action proceed in this Court as an action properly removed to it.

KENNY NACHWALTER, P.A.

Dated:  September 29, 2014

By: /s/ Robert D. W. Landon III
Robert D. W. Landon III (Fla. Bar No. 961272)
Email:  rlandon@knpa.com
KENNY NACHWALTER, P.A.
1100 Miami Center
201 South Biscayne Boulevard
Miami, Florida 33131
Telephone:  (305) 373-1000
Facsimile:  (305) 372-1861

*Counsel for Humana Medical Plan, Inc.,
Humana Health Insurance Company of
Florida, Inc., and Humana Insurance Company*

OF COUNSEL:

K. Lee Blalack II
William T. Buffaloe
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C. 20006
Phone: (202) 383-5300
Facsimile: (202) 383-5414

## CERTIFICATE OF SERVICE

I hereby certify that on September 29, 2014, I have caused the foregoing to be filed with the Clerk of the Court, and I have served a copy of the foregoing to Plaintiff's counsel via U.S. Mail, postage prepaid, and via electronic mail, at the following address:

Alan M. Fisher, P.A.
818 A1A North
Suite 303
Ponte Vedra Beach, Florida 32084
Phone: (561) 743-0745
Fax: (561) 743-2414
E-mail: amfpalegal@aol.com

*[signature]*
Robert D. W. Landon III

507814v1

KENNY NACHWALTER, P.A.